Good morning, Your Honor. Charles McDonald, Jr. appearing on behalf of Calum Richard Nuwintore. Your Honor, this appeal raises the question of ineffective assistance of counsel in negotiating a guilty plea under the standard of India v. Kentucky. That is, whether the immigration consequences were adequately conveyed to the defendant. Your Honor, I just want to make sure I understand. Mr. Nuwintore is now He is subject to deportation. We don't use deportation anymore. I believe he's subject to removal and it's temporarily suspended. He has withholding, right? Is it withholding? He has withholding. Now, will the results in this case have any bearing on his asylum? Yes. If the judgment is set aside and renegotiated with a loss amount under $10,000, the immigration court will rehear the matter and remove the removal order. A little quick, because he had asylum when we started this. And with his asylum when we started it, then we had to change a plea and we got $13,301 and if it had been under $10,000, there may have been no worry whatsoever. But then, even after getting that, the immigration department withheld his removal. There's nothing in the withholding of removal which suggests that this particular case is going to make a difference on whether his removal is withheld. The removal order itself depends on this fine and the fact that he admitted that amount in the U.S. District Court in 2010. So you're saying the removal order itself suggests this is going to determine whether he's removed? Yes. Where is that in the record? That is, of course it's not in the record. Well, that seems to me that it follows that. I never read anything like that. Well, the decision in each one holds that the offense cannot need to remove him unless it's just on the generic pieces of the offense. It has to be something that the defendant admitted. The immigration court here said directly, you admitted an amount of over $10,000. That's why you are removable. I just want to make sure I didn't miss something. Why is this the remedy which he has in all? It seems to me that the red of error, core of no peace, is supposed to be a remedy as when he has no other remedy. He does not have habeas corpus because by the time he got through with the immigration authorities and although he doesn't have habeas corpus because they didn't use it, he didn't know he had a habeas claim. That's the point. That's the whole point of core of no peace. Something that you find out later and this is a classic situation where we're going to see core of no peace because it's when you get to immigration court that you find out the hidden knife that was in... Well, I guess if there was a hidden knife, then it is an unusual situation, but I guess we're back to it wasn't really hidden. Well, we think that's why it merits review at this level. Yes, it was hidden. It wasn't communicated to him. He filed a declaration in which he said that it wasn't communicated to him. We don't have any declarations from defense counsel. I tried. I'm sure the government may have tried, but at any rate there's no answer from him and indeed the conclusion is inescapable that he was not told of this removal consequence. The counsel, it may not have been as clear as he would have liked at this point, but he was told of it because he had a loss over $10,000. That's right in the plea agreement. That he had a removal that's presumptively mandatory. Okay, ask the government if they think that's an accurate advisement because their brief says that he was accurately advised off the record that he would not be removed. That's their decision. So I'm curious if that's a question you can ask them. What do we do with the colloquy? Are we looking at pages 29 and 50 of the record or are we looking at pages 13 and 14 of the plea colloquy where the district court is going through the recitations that support the claim and comes up with the $13,000 and then on the next page says, Mr. Nuentor, did you hear what the U.S. Attorney just said? Yes, Your Honor. Is everything he said true, correct, and accurate? Yes, Your Honor. He's admitted in open court to the $13,000. So that's just resolved. Because that's the condition of getting the plea bargain. That's right. But he's just quietly admitted that he was responsible for $13,000. People in plea bargains are told you're either going, you've got two choices. Okay, either go to prison for 10 or 20 years or you say these things that the U.S. Attorney is going to say. But that's what you agreed to. That's what a plea bargain is. But he's told the court that that was correct. Yes, that's what you lied to. You know, that's what you lied to. Well, let me ask this. The trial statement... The trial statement in California, people pleading guilty to reckless driving every day of the week is paid lesser offense to drunk driving. That doesn't mean that they were reckless driving. Nobody said, the California Supreme Court says they don't have to be reckless driving. They may have been straight down the middle of the road exactly where they were supposed to be. So they're not pleading guilty to what the agreement is. That's the nature of a plea bargain. I would have thought your answer to Judge Breyer would be that you would not have been in a position to recognize that question, if you had been properly advised by counsel. That's correct. Counsel had told him, look, I have a mandatory deportation or removal. Yes. Then, you know, if you take this deal there's no doubt about it, you're going to be removed because you're going to have to admit to $13,000. That's not what he was told. I mean, I don't think he was denied in response to Judge Breyer's question that that may in fact have been true. I think your position is that he was not, he should not have been in a position to be asked one way or the other if he had the right to remain silent. Oh, he dropped everything you just said. I don't have an obvious understanding. I mean, he has to meet you all the way home. He just gets you to a different place. I don't understand that. He claims to have been told certain things by his lawyer in the liberty department, so we don't have any statement by the lawyer. I mean, I'll give you a case. I'll give you an opinion. Rodriguez-Dagan. I'm sorry, Rodriguez-Dagan. Rodriguez-Dagan. Yes, thank you. So in that case, we had the statement of the defendant and we also had the logic of the statement of his lawyer. We don't have any of that here. Do we simply believe you're lying? I mean, it's easy enough to make up afterwards. You were told that by my lawyer. Well, the district court could have had an evidentiary hearing. I believe we asked for one, but I don't have any power to force him to give us a statement. But what overshadows all of this is that Mr. Neuendorf's declaration is entirely plausible and almost inescapable. Why would you plead guilty to something that Kerry did not say? It seems implausible in that if you read the change of plea hearing and what he was told there, if you read the plea agreement and what he was told and what he agreed to there, if you read what he pleaded guilty to one count and what would happen there and if you read the sentencing hearing, it seems totally contradictory. Let me urge the court to read the defense sentencing memory of the defense attorney. Well, I read that sentencing hearing where a counsel got up and said your honor, the defendant is 43 years old. He's facing departure. He's not a citizen. Well, I don't I might have got that wrong. Last year when we had the discussions before we accepted the plea agreement, I did state very clearly on the record that I believed he would be deported. And I believe that is the case as we sit here tonight. Well, that's why I said, let me back up but still, as soon as this was entered this plea was entered and the pre-sentence report was prepared, the first thing defense counsel did was file a memorandum that said the loss amount guess what, is less than $10,000. That is inconsistent with advising somebody to admit an amount over $10,000. The judge didn't accept that. And as far as that, well, that doesn't tell you. We've been asking what's defense counsel's position. We haven't heard from him. There he is. He's saying it's under $10,000. That is what I said. I said it seems a little uneasy for me to believe what your client now wants to say to help himself out. When I read what happened at the change of plea hearing when I read what happened in the plea agreement, when I read what happened when he pled guilty to one count, that's what I said. I'm not talking about what counsel will say or won't say. I'm saying what did he say to the court? Now he can come in and say whatever he wants to say to try to get out of it. Well, I was asked the question, what does defense counsel say? That's what defense counsel said. It's under $10,000. That wasn't a question. Again, we answered it before. It's the government's position that he was correctly advised that he would not be removed. That's in their brief. That's the position they take. Well, in fact, at this point, he hasn't been removed. That's all we can say. Well, I looked for the withholding, and I couldn't find even the order. The withholding is in the record. It's not in the record. Well, there's a large discussion of it in the immigration court finding about all the reasons why he's not temporarily subject to removal. And, in fact, Schaeffer, guess what? We have a new administration in Washington. This is going to change if this is a sort of balance piece over his head. No one would admit to something like that if they knew that they were exposing themselves to the death penalty, if they were returned to Bararki. I mean, he's a phenomenal person. He has a withholding. He's not going to lose. But that's for nonsense. Do you know what withholding is? Bararki is not the equivalent of asylum. He's been, I think, he's a Zionist. He's a Zionist. Thank you. Good morning. Good morning. Brian Fogarty on behalf of the United States. Mr. Nuentor's trial counsel told him that he would be subject to deportation and that he would ultimately avoid physical removal from the United States. That advice was accurate. And because Mr. Nuentor got exactly what he was told to expect as a result of his guilty plea, Mr. Nuentor's trial counsel has alleged in Mr. Nuentor's affidavit is that Mr. Nuentor's trial counsel told him that he would ultimately be saved from deportation, which would be physical removal from the United States. What you're saying is physical removal. This is a gloss you're putting on it. It sounds to me like what I'm saying. What you're saying is my lawyer said I won't be deported. Do you agree with that? I agree that there are two elements. There's one, the removability, which is the advisement that Mr. Nuentor's lawyer gave him on the record and the court gave him on the record about whether he'd be subject to physical removal. And then there's the second element, which is what Mr. Nuentor's attorney The question is, Dick, as I read out of Rodriguez-Vega, if it is virtually certain that you lose your asylum status, your lawyer has gotten a feeling it is virtually certain that you're going to lose your asylum status. In that, Rodriguez-Vega says, the fact that you might get other kinds of deportations or withholding is not good news. You have to tell the client unequivocally that this status that you have as an asylum beneficiary, you will lose. And that is what he did. You read Rodriguez-Vega's item and saying that that is what the lawyer might say in the removal, withholding of removal and cancelling are not good enough. I agree that Rodriguez-Vega says that, yes, you must advise if it is certain, if the results are certain, you must advise about the provide accurate advice consistent with that certainty. Here, Mr. Nuentor's attorney came to the point in that having withholding of removal or cancelling is not equivalent. You've got to make it clear you will lose that asylum status. And the fact that you might get some other kind of relief is just not good enough. And that's what I read Rodriguez-Vega to say. That's correct, Your Honor. And here, Mr. Nuentor's attorney did just that. Where do we have evidence that he did just that? He said on the record and at the change of plea that Mr. Nuentor would lose his asylum status. Let's look at that. What page? Let's look at page 44. Let's look at the language. I think it may be page 43. I think it's page 43. Thank you, Your Honor. That would be lines lines 10 through 13. Citizenship or any attempted citizenship would be revoked. Now, this is a defense lawyer. He's been advised of his rights. He's actually written into the plea agreement. He's been advised of his rights based on the plea. And I believe that he will manitoree being citizenship or any attempted citizenship would be revoked. And he would be deported. So you read this as saying that's what he advised the lawyer, the client advised the lawyer that it seems to say that this is what the plea agreement says. Well, this is Mr. Nuentor's attorney in open court advising the court on what Mr. Nuentor's guilty plea would be. I'm sorry, but when does he say that he advised the client that in fact he would certainly be removed? Who would certainly be removed? The advisement is on the record and it's Mr. Nuentor's attorney's statement in open court that these are the consequences of his client's guilty plea and his client is with him in court. Also, Your Honor, if you turn to the next of the records, page 92, Mr. Nuentor's own declaration indicates that his trial counsel shall be, and I'm quoting from the declaration, shall be a portion of the written plea agreement indicated that there could be an evaporation counsel. I think you're saying page 92. Yes, page 92. My own declaration goes to page 91. I'm sorry, is that another? Okay, I'm so confused. Page 92, the last paragraph of page 92 and the first paragraph of page 3, which states that the written plea agreement contains a clause which states that because the defendant is pleading guilty to access to vice fraud with a loss of an amount of over $10,000, removal is presumptively mandatory. That is in Mr. Nuentor's declaration. But he also says he shall be the portion of the written plea agreement indicated that there could be a loss of an amount of over $10,000, removal is presumptively mandatory. That is in Mr. Nuentor's declaration. But he also says he shall be the portion of the written plea agreement indicated that there could be a loss of an amount of over $10,000, removal is presumptively mandatory. That is in Mr. Nuentor's declaration. But he also says removal is indefinite unless there is a change in circumstances. And you're suggesting then that regardless of what we do here, there's no change of circumstances? There's no indication from the government's perspective that this case is held. If the court were to affirm this, the district court dismissal of the petition, that that would have an effect on Mr. Nuentor's petition, or Mr. Nuentor's status in the United States. Do you agree with that? Just if we were to grant a grant in this case, what follows from that? In Hades, we know that we, you know, oftentimes in the government, you know, 60 to 90 days to retire. What do you do in a case like this with forum novices? Just as a practical matter, if the conviction was vacated, then there would be the case would be reinstated. The case would be reinstated? Could it be retried? Potentially, yes. Could it just violate felony jeopardy? You could have been, like, vacated. I don't believe so. He could be subject to a different term of months in prison. A solicitor went back, and then he came back and he said, okay, I see it's $73,000, and also it's $240,000 worth of various figures that are being thrown around here. I suppose that you could have acted as the jury of that. If the judge comes back and says, oh, the preconception is way too high, you've got another two years to serve, and then you can deal with the immigration folks. I'm not sure that you could do retrying and having already served the sentence that was imposed. So if you issue the writ, does his conviction just go away? I would say that there has been no error, so the writ shouldn't have been violated. If you were to issue the writ, I'm trying to figure out what the consequences are. I'm trying to figure out what happens. We don't see a lot of these writs. I'm just curious as to what the consequences are. I assume that this just sets aside the guilty plea, and he can't be charged again in a month. Would that be what would prevent the government from charging him at the same time in going to trial in this state? If the conviction was vacated, then he hasn't been he has served the custodial sentence as a result of the first sentence. I think that's right. Has he received a restitution? I'm not sure if the restitution on his restitution is $13,000, because that was given out to him himself, and they pled guilt to him. So presumably, if he was retried, even if he didn't get additional time in prison, he might be ordered to pay a restitution of $70,000, $250,000, or it will also be settled by the jury. That's correct, Your Honor. There's evidence from the sentencing period and elsewhere in the record that suggests that the loss amount was potentially much larger than the $13,000 to which he stipulated, and that's another reason why this plea offer was favorable to Mr. Nuentor, and it explains, at least in part, why he would accept it. But it's just a comment. I mean, if you both believe that the jury thinks that he might be retried, then... And this plea offer provided him captive exposure to his loss amount, and it also provided him the best mechanism to stay within the United States, which he ultimately has, at the same time. Thank you, Your Honor. We'll take a minute for a bundle. There'd be no double jeopardy consequence in this case. There's no trial, so there's no double jeopardy. He could be tried on everything. And if the jury came back and said, you know, we find $250,000 of loss, that would mean he could actually get additional time. And he has a restitution that's reflected in the immigration court decision. Basically, there are other restitutions he could have made, and that was one of the reasons. It was one of the reasons cited for giving him non-suspension of removal. The government, in this case, wants to have you king. You need a team. They want to point to all of these things that say that he was absolutely going to be deported, and they knew that. At the same time, he told law director that he wasn't going to be deported. The standard of going with this case would have been tried is an objective one. That is, you have to assess the interests of both sides objectively. Would the government honestly take this case to trial just to argue over a clause amount, which they can establish at the trial judge by a preponderance of the evidence without even having a jury trial? It's all relevant conduct. But they can't establish a loss for him unless he pleads guilty again, can they? Yes, they absolutely can. Once he pleads guilty to one count, then count two, he illegitimately is going to be gone if you win. Well, the question is not whether he's going to plead guilty. I believe that he would plead guilty if we went back. It's just that he wouldn't admit the loss amount over 10,000. That's the whole question. Otherwise, we'd have a jury trial over just the loss amount that district court, I don't think, would tolerate. District court defying the same thing itself and impose the same sentence or a greater sentence. He risks all counts, but it's worth it to a point being proved for his country. Thank you. Okay. Thank you so much.
judges: Kozinski, Bybee, N.R. Smith